IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARIO ANTWAINE HOLIFIELD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-CV-445-WKW |
| | ) | [WO] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Petitioner Mario Antwaine Holifield's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence imposed in 2008 under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *See United States v. Holifield*, No. 2:07-cr-123-WKW (M.D. Ala. Jan. 17, 2008) (criminal judgment). Through counsel, Mr. Holifield filed this § 2255 motion—his first—challenging his designation as an armed career criminal under the ACCA based upon the United States Supreme Court's decision in *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015). Mr. Holifield argues that, under the *Johnson* decision, in which the Court held that the residual clause of the "violent felony" definition in the ACCA is unconstitutional, he no longer has three prior convictions that qualify as ACCA predicates. He seeks resentencing without application of the ACCA.

On October 10, 2019, the Magistrate Judge filed a Recommendation (Doc. # 19) that Petitioner's motion (Doc. # 2) be denied. Petitioner timely objected to the Recommendation. (Doc. # 23.) After entry of the Recommendation, the court ordered both parties to brief two new issues: "[w]hether *Shepard*-approved documents establish which section of Ala. Code § 13A-6-3(a) Mr. Holifield was convicted of violating" and whether the court can consider such documents in light of *Tribue v. United States*, 929 F.3d 1326 (11th Cir. 2019). (Doc. # 24.) Both parties have complied with the order. (Docs. # 25, 26.) Upon an independent and *de novo* review of the record, Petitioner's objections are due to be overruled, and the Magistrate Judge's Recommendation is due to be adopted with modification.

## I. DISCUSSION

The Magistrate Judge provided a thorough recitation of the factual and procedural history of this case up to October 10, 2019, which the court need not fully repeat but will briefly summarize. (*See* Doc. # 19, at 2–3.) On January 17, 2008, Mr. Holifield was sentenced for one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), which normally carries a sentence of not more than ten-years' imprisonment, 18 U.S.C. § 924(a)(2). His sentence was enhanced pursuant to the ACCA, which provides that an individual who violates § 922(g) and has three or more prior convictions for a "violent felony" is subject to a mandatory minimum sentence of fifteen years. *See also Descamps v. United*

2

*States*, 570 U.S. 254, 258 (2013) (noting the typical statutory maximum sentence and the ACCA's heightened mandatory minimum for § 922(g) convictions).

In 2008, when Mr. Holifield was sentenced, the ACCA defined a "violent felony" as any crime punishable by imprisonment for a term exceeding one year that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) "is burglary, arson, or extortion, involves use of explosives"; or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B). These definitions of "violent felony" fall into three respective categories: (1) the elements clause; (2) the enumerated-offenses clause; and (3) the now-void residual clause. *See In re Sams*, 830 F.3d 1234, 1236–37 (11th Cir. 2016). In June 2015, the Supreme Court held that the ACCA's residual clause was unconstitutionally vague but left in place "the remainder of the Act's definition of a violent felony." *Samuel Johnson*, 135 S. Ct. at 2563. Subsequently, in *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held that the *Johnson* decision announced a new substantive rule of constitutional law that applies retroactively to cases on collateral review.

The presentence investigation report ("PSR") identified three predicate convictions but did not specify under which clause of the ACCA each fell. These predicates included (1) a 1997 Alabama conviction for manslaughter, (2) a 2000 Alabama conviction for manslaughter, and (3) a 2000 Alabama conviction for

second-degree robbery. (Doc. # 19, at 3.) Neither Mr. Holifield nor the Government objected to the PSR's classification of Mr. Holifield as an armed career criminal under the ACCA. On the Government's motion, the court partially granted a downward departure and sentenced Mr. Holifield to 175-months' imprisonment. (Doc. # 2-2, at 7–8.) Mr. Holifield did not file a direct appeal of the judgment or sentence.

Mr. Holifield objects to the Magistrate Judge's conclusion that he has failed to meet his burden of proof under *Beeman v. United States*, 871 F.3d 1215 (11th Cir. 2017). (Doc. # 23.) He argues that his 2000 conviction for Alabama manslaughter could not have been analyzed under a modified categorical approach because the sentencing court lacked the necessary information to conduct such analysis. He argues that the sentencing court must have analyzed his conviction under a formal categorical approach. (Doc. # 23, at 17.) Petitioner contends that a formal categorical approach dictates that "his 2000 conviction for Alabama manslaughter only qualified as a 'violent felony' under the residual clause." (Doc. # 23, at 11.) Petitioner's argument that his conviction must have been analyzed under a formal categorical approach is strong, but it falls short due to his failure to object to the description of the crime in his PSR. Additionally, his inability to point to binding precedent making clear that Alabama manslaughter could only be a predicate conviction under the residual clause is likewise fatal to his petition.

4

### A. Mr. Holifield cannot carry his burden of proving he was sentenced under the residual clause when he failed to object to PSR statements indicating his 2000 manslaughter conviction was for an intentional killing.

The Eleventh Circuit has placed the burden of proving a *Johnson* claim firmly on the movant.

> Only if the movant would not have been sentenced as an armed career criminal absent the existence of the residual clause is there a *Johnson* violation. That will be the case only (1) if the sentencing court relied solely on the residual clause, as opposed to also or solely relying on either the enumerated offenses clause or elements clause (neither of which were called into question by *Johnson*) to qualify a prior conviction as a violent felony, and (2) if there were not at least three other prior convictions that could have qualified under either of those two clauses as a violent felony, or as a serious drug offense. . . . To prove a *Johnson* claim, the movant must show that—more likely than not—it was use of the residual clause that led to the sentencing court's enhancement of his sentence. If it is just as likely that the sentencing court relied on the elements or enumerated offenses clause, solely or as an alternative basis for the enhancement, then the movant has failed to show that his enhancement was due to use of the residual clause.

*Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017).

*Beeman* is an exacting burden in any case, but even more so here, where both at sentencing and now, it is unclear which branch of Alabama's manslaughter statute Mr. Holifield was convicted of violating. Therefore, the circumstances require Petitioner to show that 1) the sentencing court acted under the assumption that he was convicted of Alabama manslaughter writ large (not its subsection for voluntary manslaughter) or of reckless manslaughter; 2) on his sentencing date, Alabama's manslaughter statute, analyzed as a whole, only qualified as an ACCA predicate

5

under the residual clause; 3) Alabama's manslaughter statute, analyzed as a whole, does not qualify as an ACCA predicate under current law; and 4) Mr. Holifield does not have three qualifying ACCA predicates without this manslaughter conviction.

Following this chain of reasoning, the Recommendation found that Mr. Holifield had not met his burden. First, Alabama Code § 13A-6-3(a)(2) (a prototypical voluntary manslaughter statute) qualified as an ACCA predicate, even though § 13A-6-3(a)(1) (a reckless manslaughter statute) may not. *See* Ala. Code § 13A-6-3(a) ("A person commits the crime of manslaughter if: (1) He recklessly causes the death of another person, or (2) He causes the death of another person under circumstances that would constitute murder under Section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."). Second, Mr. Holifield had not proven that the sentencing court more likely than not sentenced him under the belief that he had been convicted of reckless manslaughter because "'where . . . the evidence does not clearly explain what happened[,] . . . the party with the burden loses.'" (Doc. # 19, at 16 (quoting *Beeman*, 871 F.3d at 1225).) In other words, the Magistrate Judge concluded that Mr. Holifield had not met his burden because it was equally likely that the sentencing court believed he had been convicted of voluntary manslaughter. Therefore, the

Magistrate Judge recommended that Mr. Holifield's petition should fail without reaching the second, third, and fourth issues in this case.

Mr. Holifield does not object to the Recommendation's finding that § 13A-6-3(a)(2), and by extension his 1997 Alabama manslaughter conviction, can serve as an ACCA predicate.[1] He does dispute that the sentencing court could have sentenced him under the belief that his 2000 conviction was imposed under § 13A-6-3(a)(2). On this threshold issue of historical fact, his objection is strong but does not compensate for his failure to object to the PSR's description of that conviction at the time of his sentencing. The court need not resolve the post-*Tribue* question of whether it can look to the newly introduced *Shepard* documents, because the unobjected-to PSR statements gave the sentencing court a sufficient foundation to conclude that Mr. Holifield was convicted of voluntary manslaughter. Therefore, Mr. Holifield has failed to meet his burden.

As explained in the Recommendation, courts may use the modified categorical approach to decide whether an ACCA enhancement applies when the

---

[1] Even if Mr. Holifield did object, the Recommendation's finding on this point would be adopted. Mr. Holifield's PSR states that in November 1995, Holifield "intentionally caused the death of [the victim] by shooting him with a pistol, said death being caused in a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself, in violation of Section 13A-6-3(B) [sic] of the Code of Alabama, 1975." Because the PSR description mirrors the text of § 13A-6-3(a)(2), it is more likely than not that the sentencing court believed Mr. Holifield had been convicted of voluntary manslaughter. For the reasons stated in the Recommendation, such a conviction could serve as an ACCA predicate under the elements clause under current law, so any claim to the contrary would fail at *Beeman*'s second prong. (*See* Doc. # 19, at 10–12.)

defendant was convicted under a statute that sets out one or more elements of the crime in the alternative. When some alternatives would permit enhancement and some would not, a court may determine which of the alternative elements formed the basis of the defendant's prior conviction by considering only the statutory definition of the offense of the conviction, the charging document, the written plea agreement, the transcript of the plea colloquy, undisputed facts found in the PSR, and any explicit factual finding by the trial judge to which the defendant assented. *Shepard v. United States*, 544 U.S. 13, 16 (2005); *United States v. Bennett*, 472 F.3d 825, 833–34 (11th Cir. 2006) (per curiam); (Doc. # 19, at 8.) The focus of the inquiry is on what conduct the defendant "necessarily admitted." *Shepard*, 544 U.S. at 26. This exception to the formal categorical approach applies to permit an ACCA enhancement if the *Shepard* documents show that the petitioner was convicted under a narrower alternative. *Shepard*, 544 U.S. at 17. Otherwise, the court must "look only to the fact of conviction and the statutory definition of the prior offense" to determine whether the conviction can serve as an ACCA predicate. *Id.* (quoting *Taylor v. United States*, 495 U.S. 575, 602 (1990) (internal quotation marks omitted)).

The Recommendation's explanation of the categorical and modified categorical approaches cites post-2008 cases that narrowed *Shepard*'s commands (*See* Doc. # 19, at 7-9.) These cases discouraged inquiries into "[w]hether the

8

defendant's conduct is such that he 'hypothetically could have been convicted' of a crime of violence." *United States v. Estrella*, 758 F.3d 1239, 1247 (11th Cir. 2014) (quoting *Descamps v. United States*, 570 U.S. 254, 268 (2013)); *see also Curtis Johnson v. United States*, 559 U.S. 133, 137 (2010) (holding that when *Shepard* documents fail to illuminate the basis of a conviction, the court must assume a conviction rests upon the least of the acts criminalized); *Estrella*, 758 F.3d at 1247 ("When we analyze a particular conviction under a divisible statute in an effort to determine which of the alternative elements formed the basis of the prior conviction, we must ask: Which 'version' of the divisible statute formed the basis of the conviction—that is, which of the alternative elements did the jury all agree to or the defendant necessarily admit? The goal is to determine 'which statutory phrase was the basis for the conviction' . . . ." (internal citation omitted) (quoting *Curtis Johnson*, 559 U.S. at 144)).

However, only pre-2008 caselaw matters in *Beeman*'s historical fact inquiry. On Mr. Holifield's sentencing date, Eleventh Circuit caselaw was clearly more permissive, allowing district courts to look to the nature of a defendant's past conduct as reported in unobjected-to PSR statements. For example, in *United States v. Bennett*, Mr. Bennet objected to the probation office's use of police reports in the PSR but "failed to object to the facts of his prior convictions as contained in his PS[R] and addendum to the PS[R] despite several opportunities to do so; thus, he

9

[wa]s deemed to have admitted those facts" for the purposes of an ACCA enhancement. 472 F.3d at 833–34.

The sentencing court's only information about the 2000 manslaughter conviction was from the PSR, which stated,

> The defendant was originally charged with Murder. According to the indictment filed in this case, on or about February 26, 1998, the defendant intentionally caused the death of another person, Tykia Phillips, by shooting her with a firearm, in violation of Section 13A-6-2 of the Code of Alabama, 1975. Complete court records for this conviction were not received from Jefferson County Circuit Court. Once these records are received, further details will be provided.

(Doc. # 9-3, at 8.)

The recently filed documents do not provide additional information, nor would they necessarily all qualify as *Shepard* documents. The indictment charged Mr. Holifield with murder. (Doc. # 25-3.) The case action summary (which appears to be equivalent to a federal judgment form) and jail commitment form state that Mr. Holifield pled guilty to manslaughter. (Doc. # 25-5, at 1; Doc. # 25-6, at 8.) The conviction report likewise states that Mr. Holifield was convicted of manslaughter under § 13A-6-3. (Doc. # 25-6, at 5.) Strangely, the "Explanation of Rights and Plea of Guilt" states that Mr. Holifield pled guilty to murder (Doc. # 27, at 7), but in light of the other evidence, this can be disregarded as an error. The court need not resolve the question of whether it can look to these documents because the unobjected-to statements in the PSR are sufficient to resolve this case.

Under *Bennett*, the sentencing court could interpret Mr. Holifield's failure to object to the PSR's account of his conviction as Petitioner's admission that he commited an *intentional* killing. Even though the sentencing court was aware that Mr. Holifield did not plead guilty to the exact charge in the indictment, the sentencing court had sufficient grounds to believe Mr. Holifield was convicted of voluntary manslaughter, which could serve as an ACCA predicate under the ACCA's elements clause. *See supra* note 1 (adopting the Magistrate Judge's recommended finding that voluntary manslaughter can serve as an ACCA predicate under the ACCA's elements clause). Therefore, Petitioner has not carried his burden of showing he was more likely than not sentenced under the residual clause. As an alternative holding, the court will also proceed to analyze whether as of his sentencing date, an Alabama manslaughter conviction only qualified as an ACCA predicate under the residual clause.

**B.** **On Mr. Holifield's sentencing date, precedent did not clearly hold that Mr. Holifield's 2000 conviction only qualified as a predicate under the ACCA's residual clause.**

Even if the sentencing court believed that Mr. Holifield was convicted of manslaughter writ large or of reckless manslaughter, Mr. Holifield would still be required to establish that there was precedent on January 17, 2008, "holding, or

11

otherwise making obvious," that such a manslaughter conviction could only serve as a predicate under the residual clause. *Beeman*, 871 F.3d at 1224.

The Eleventh Circuit has indicated that binding precedent analyzing the statute or a similar statute is generally needed for caselaw evidence to be "obvious." *See Robinson v. United States*, No. 17-13929, 2019 WL 6492479, at *3 (11th Cir. Dec. 3, 2019) ("Robinson did not, either in the district court or on appeal, point to binding cases holding those convictions could qualify as ACCA predicates only under the residual clause. Thus, . . . Robinson has failed to prove what Beeman requires . . . ."); *United States v. Pickett*, 916 F.3d 960, 965 (11th Cir. 2019) (holding that the petitioner had not met his burden because "[n]othing in th[e] collection of cases" Pickett offered "amounts to binding precedent" but remanding to allow the parties to address *Beeman* before the district court); *Morman v. United States*, No. 18-13593-A, 2018 WL 9490361, at *2 (11th Cir. Dec. 11, 2018) (denying a certificate of appealability because "there was no case in *this Circuit*, at the time, holding that Alabama third-degree robbery qualified as a violent felony only under the ACCA's residual clause" (emphasis added)), *cert. denied*, 140 S. Ct. 376 (2019); *Harper v. United States*, 742 F. App'x 445, 448–49 (11th Cir.) ("While the sentencing court noted that Harper was an armed career criminal—an assertion with which Harper's counsel affirmatively agreed—it did not state how it came to that determination. Nor is Harper able to point to any precedent from this Court that

analyzes the Georgia aggravated assault statute under the residual clause. Thus, Harper (like the movant in *Beeman*) cannot show that he more likely than not was sentenced under the residual clause."), *cert. denied*, 139 S. Ct. 579 (2018); *see also Williams v. United States*, No. 18-12010, 2019 WL 5957870, at *3 (11th Cir. Nov. 13, 2019) (granting a petition where the Supreme Court had clearly established the elements of generic burglary and the Florida burglary statute was obviously overbroad, even though the Eleventh Circuit had not ruled on the statute).

The Eleventh Circuit has acknowledged the possibility that persuasive precedent could suffice. *See Gomez v. United States*, 743 F. App'x 344, 347 (11th Cir. 2018) ("This inquiry can include . . . consideration of how courts viewed the statutes under which Gomez had previously been convicted, and how courts interpreted other similar statutes at the time he received his ACCA sentence."); *Dixson v. United States*, 724 F. App'x 896, 898 (11th Cir. 2018) (acknowledging that "[t]he status of a Florida conviction for attempted first degree murder as an ACCA predicate conviction is still an open question in this circuit" but holding that on remand "the district court could also consider how Florida attempted first degree murder or similar statutes were viewed by courts at the time of Dixson's sentencing"). It is possible that none of these instructions is binding on this court. Only *Pickett* was reported, and its lengthy analysis of *Beeman* is arguably dicta

because the Eleventh Circuit ultimately decided to remand the case to allow the parties to address *Beeman* in the district court. *Pickett*, 916 F.3d at 967.

Mr. Holifield's sentencing date puts him at a disadvantage. Had he been sentenced after May 21, 2010, his present claim would have the benefit of the Supreme Court's decision in *Curtis Johnson v. United States*, 559 U.S. 133 (2010), and the Eleventh Circuit's opinion in *United States v. Palomino Garcia*, 606 F.3d 1317 (11th Cir. 2010). In *Curtis Johnson*, the Supreme Court held "that in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140. In *Palomino Garcia*, the Eleventh Circuit added that "a conviction predicated on a *mens rea* of recklessness does not satisfy the 'use of physical force' requirement under [the Sentencing Guidelines] § 2L1.2's definition of 'crime of violence.'" 606 F.3d at 1336 (interpreting language that is identical to the ACCA's elements clause). This combination might have carried the day. *See United States v. Young*, No. 4:16-cv-362-RH/CAS, 2018 WL 9439535 (N.D. Fla. Mar. 14, 2018) (finding that an Alabama manslaughter conviction could not serve as an ACCA predicate under the elements clause at the petitioner's 2013 sentencing nor at the time of his habeas decision), *adopted by* 2018 WL 9439536 (N.D. Fla. June 1, 2018); *Toyer v. United States*, No. 1:16-CV-8050-VEH, 2017 WL 2405094 (N.D. Ala. June 2, 2017) (finding pre-*Beeman* that Alabama manslaughter did not

14

qualify as a crime of violence under current law); *Jefferson v. United States*, Criminal No. 10-00141-KD, 2016 WL 6023331 (S.D. Ala. Oct. 13, 2016) (same).

Instead of being able to rely on this clear, binding precedent, Mr. Holifield can only rely on 1) *Leocal v. Ashcroft*, 543 U.S. 1 (2004), 2) state caselaw indicating that Alabama's manslaughter statute criminalized conduct that does not require physical force, and 3) persuasive precedent specifically holding involuntary manslaughter was not an ACCA predicate under the elements clause.

In *Leocal*, the Supreme Court analyzed and rejected the use of Florida's driving under the influence statute as a predicate under 18 U.S.C. § 16(a)'s elements clause, which is identical to the ACCA's. The Court held that the "use of physical force" identified in § 16(a) "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." 543 U.S. at 9. The Court held that "crime of violence" "suggests a category of violent, active crimes." *Id.* at 11. As an example, the Court posited that "we would not ordinarily say a person 'use[s] . . . physical force against' another by stumbling and falling into him." *Id.* at 9 (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993)).

Mr. Holifield argues that, in 2008, reckless manslaughter was obviously not a violent, active crime because Alabama courts had already interpreted the statute to encompass deaths caused by inactivity or accident. *See, e.g.*, *Ex parte McCree*, 554 So. 2d 336, 337–38 (Ala. 1988) (noting that McCree was convicted under § 13A-6-

15

3(a)(1) for showing a firearm to a friend that accidentally discharged, but the propriety of the charge was not raised on appeal); *Ex parte Weems*, 463 So. 2d 170 (Ala. 1984) (downgrading a conviction of murder to manslaughter for a defendant convicted of carrying a pistol into a café where it accidentally discharged); *Washington v. State*, 608 So. 2d 771 (Ala. Crim. App. 1992) (affirming a reckless manslaughter conviction where the defendant noticed burns on the two-year-old victim he was babysitting, but did not seek assistance and "neither encouraged nor discouraged the victim's mother to seek medical care"); *Maxwell v. State*, 620 So. 2d 93 (Ala. Crim. App. 1992) (upholding a reckless manslaughter conviction for a DUI-related death). The accidental firearm discharges in *Weems* and *McCree* are certainly apt, though more tragic, analogies to "stumbling and falling into" a victim.

The argument that *Leocal*'s holding extends to a statute with a *mens rea* of recklessness because such a statute criminalizes accidental conduct is imminently reasonable, which is likely why the Eleventh Circuit agreed with it in *Palomino Garcia*. Still, that this legal conclusion was reasonable in 2008 does not negate the fact that it was still an open question in this Circuit at that time. Therefore, *Leocal*'s application to Alabama manslaughter was not obvious to the parties or the sentencing court until *Palomino Garcia* was decided.

Mr. Holifield also cites pre-2008 cases from other circuits that held manslaughter qualified as a "crime of violence" under the residual clause. He has

cited some favorable persuasive precedent. However, three of those cases were silent on whether involuntary manslaughter could also qualify under the elements clause. *See United States v. Walter*, 434 F.3d 30, 38–40 (1st Cir. 2006); *United States v. Williams*, 67 F.3d 527 (4th Cir. 1995); *United States v. Leeper*, 964 F.2d 751 (8th Cir. 1992) (holding that manslaughter is a crime of violence without specifying whether it makes that holding under the elements or residual clause). It is difficult to draw any conclusions from the sparse reasoning in *Leeper*, and the statute at issue is not analogous because it criminalizes "when the person unintentionally causes the death of another person by the commission of a public offense other than a forcible felony or escape." Iowa Code § 707.5(1)(a) (1977).

The Ninth Circuit case Mr. Holifield cites analyzed vehicular manslaughter, *United States v. O'Neal*, 937 F.2d 1369 (9th Cir. 1990), but that case cited an older Ninth Circuit case that concluded without analysis that the federal involuntary manslaughter statute did not meet the elements clause of the substantially similar 18 U.S.C. § 924(c). *United States v. Springfield*, 829 F.2d 860, 862 (9th Cir. 1987). Mr. Holifield's cited Sixth Circuit case likewise stated without analysis that Michigan's involuntary manslaughter statute did not qualify as an ACCA predicate under the elements clause. *United States v. Zabawa*, 134 F. App'x 60, 65 (6th Cir. 2005). However, neither of the laws analyzed in *Springfield* or *Zabawa* is analogous to Alabama's law. Michigan's law facially criminalized causing death through

17

negligent lawful acts or negligent omissions, which is a lower *mens rea* standard than recklessness and which was more clearly foreclosed by *Leocal*. *Id.* at 64 ("Involuntary manslaughter is defined as, 'the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.'" (quoting *People v. Datema*, 533 N.W.2d 272, 276 (Mich. 1995)). The federal involuntary manslaughter law analyzed in *Springfield* is not analogous because it had no clear *mens rea* standard (or, at best, a *mens rea* of negligence). *Springfield*, 829 F.2d at 862 ("Involuntary manslaughter is defined under federal law as 'the unlawful killing of a human being without malice . . . [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution or circumspection, of a lawful act which might produce death.' 18 U.S.C. § 1112.").

This circumstantial evidence makes a reasonable case for why the Eleventh Circuit or the Supreme Court *should* have held that § 13A-6-3(a)(1) only qualified as an ACCA predicate under the residual clause before January 18, 2008, and was thus an unconstitutional basis for an ACCA enhancement under *Beeman*'s reasoning. However, it does not meet *Beeman*'s standard of showing that this

18

conclusion was clear or obvious to the sentencing court at that time. Consequently, Mr. Holifield's petition is due to be denied.

## II. CONCLUSION

Accordingly, it is ORDERED as follows:

1. The Magistrate Judge's Recommendation (Doc. # 19) is ADOPTED with modification;

2. Petitioner's objection (Doc. # 23) is OVERRULED;

3. Petitioner's Motion (Doc. # 2) is DENIED.

Final judgment will be entered separately.

A certificate of appealability will not be issued. For a petitioner to obtain a certificate of appealability, he must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing requires that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

Because reasonable jurists would not find the denial of Petitioner's § 2255 motion debatable, a certificate of appealability is DENIED.

DONE this 12th day of March, 2020.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE